**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**3:18-cv-80-MOC-DSC**

| | | |
|---|---|---|
| HARVEY SMITH, | ) | |
| | ) | |
| Plaintiff, pro se, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| CHARTER COMMUNCATIONS, INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

     **THIS MATTER** comes before the Court on a Motion for Summary Judgment by

Defendant Charter Communications, Inc. (Doc. No. 68). Also pending is a Motion in Limine,

filed by pro se Plaintiff Harvey Smith, (Doc. No. 67), and a Motion to Strike Surreply, (Doc. No.

79), filed by Defendant.

I.     **BACKGROUND**

     A.     **Procedural Background**

     Plaintiff filed this action against his former employer Defendant Charter

Communications, Inc. ("Charter") on February 14, 2018, after his employment was terminated.

Plaintiff's Third Amended Complaint alleges the following claims against Defendant:

discrimination and wrongful discharge, in violation of the Americans with Disabilities Act

("ADA"), 42 U.S.C. § 12101 et seq.; failure to accommodate under the ADA; interference with

his right to take leave under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §

2601 et seq.; retaliation under the FMLA based on non-selection for positions he applied for at

Charter; race discrimination under Title VII of the Civil Rights Act of 1964, as amended ("Title

1

VII"), 42 U.S.C. § 2000e et seq.; Title VII and ADA retaliation in connection with Plaintiff's non-selection for positions he applied to at Charter from September 29, 2016, to March 27, 2017; and libel and slander under North Carolina law.[1]

Defendant filed the pending summary judgment motion on March 2, 2020. Plaintiff filed a Response, Defendant filed a Reply, and Plaintiff filed a Surreply. The Court held a hearing on the summary judgment motion on June 16, 2020. Thus, this matter is ripe for disposition.

### B.    Factual Background

Plaintiff Harvey Smith was employed by Defendant Charter on February 17, 2014, as a Systems Engineer II at Charter's Charlotte, North Carolina location. (Dep. of Harvey Smith (Jan. 30, 2020), 37:12-14, 34:18-24; Doc. No. 35 at ¶ 17: Third Amended Complaint).[2] Plaintiff was responsible for managing, configuring, testing, and monitoring Charter's operating systems. (Pl. Dep. at 42:18-43:4). Throughout his employment with Charter, Plaintiff worked four, ten-hour days per week on the third shift, which was from 10:00 p.m. until 9:00 a.m. (Pl. Dep. at 37:22-38:10; 40:4-6).

Plaintiff sometimes fell asleep on the job, and his manager, Jeremy Rabon, counseled him on this issue during a February 2016 meeting to discuss his 2015 performance review. (Pl. Dep. at 54:2-13, 66:5-16; Dec. of Jeremy Rabon at ¶ 5). Rabon also documented the counseling. (Pl. Dep. at 55:1-20: Rabon Dec. at ¶ 5; Ex. 1 to Pl. Dep.). In response, Plaintiff admitted to falling asleep at work "when things are slow" but nevertheless submitted a written rebuttal to Charter attempting to justify his behavior. (Pl. Dep. at 58:4-7; Ex. 2 to Pl. Dep.; Rabon Dec. at ¶ 6).

---

[1] Plaintiff included other claims in his Third Amended Complaint, but this Court granted dismissal of some of the claims in an Order dated July 1, 2019. See (Doc. No. 43).
[2] Charter's summary judgment evidence, including declarations and exhibits, is located in Docket Nos. 69-71 of this Court's docket.

Charter reviewed the documented counseling and Plaintiff's rebuttal, in which Plaintiff admitted to inappropriate behavior and that the counseling was appropriate, but nevertheless determined that Rabon should not have issued a documented counseling that had not been pre-approved by his managers. (Rabon Dec. at ¶ 7). Based on this procedural issue, Charter withdrew the documented counseling—which had not yet been placed in Plaintiff's file—and no discipline was issued. (Pl. Dep. at 66:24-67:13; Rabon Dec. at ¶ 7).

On November 9, 2016, Plaintiff met with Rabon to discuss possibly transferring to Denver, Colorado. (Pl. Dep. at 74:20-75:7: Rabon Dec. at ¶ 8). During the meeting, Rabon mentioned another manager had witnessed Plaintiff sleeping on the job the previous weekend and brought it to Rabon's attention. (Pl. Dep. at 75:7-76:6; Rabon Dec. at ¶ 9). In response, Plaintiff shut the door and, according to Rabon, became upset, raised his voice, used profanity, and repeatedly yelled "fire me." (Pl. Dep. at 76:7-14, 80:3-5: Rabon Dec. at ¶ 9). Rabon eventually asked Plaintiff to leave the facility, and Plaintiff continued yelling as he left Rabon's office, packed up his belongings, and walked out. (Rabon Dec. at ¶ 9). Rabon sent an email reporting the incident to Charter's Director of Human Resources, Cindy Stepp. (Rabon Dec. at ¶ 10; Declaration of Cindy Stepp at ¶ 3; Ex. A to Stepp Dec. at p. 1).

On November 10, 2016, Stepp telephoned Plaintiff to discuss the previous night's incident with Rabon. (Stepp Dec. at ¶ 4; Ex. A to Stepp Dec. at pp. 1-2; Pl. Dep. at 92:24-93:7). Plaintiff denied cursing or raising his voice during the closed-door meeting and claimed that Rabon had cursed and yelled at him, making him feel threatened and intimidated. (Stepp Dec. at ¶ 4; Ex. A to Stepp Dec. at p. 2). Stepp informed Plaintiff that he would be placed on paid administrative leave while she conducted an investigation. (Pl. Dep. at 94:20-23: Stepp Dec. at ¶ 4; Ex. A to Stepp Dec. at p. 2).

3

During her investigation, Stepp interviewed three witnesses to the incident, Mike Flynn, Vinh Chau, and Greg Casey, each of whom confirmed that it was Plaintiff—not Rabon—who had yelled and used profanity. (Stepp Dec. at ¶ 5; Ex. A to Stepp Dec. at p. 2). For example, Flynn, a manager whose office was next door to Rabon's, stated that he overheard Plaintiff shouting and cursing at Rabon, and that Rabon did not curse at Plaintiff. (Stepp Dec. at ¶ 6; Ex. A to Stepp Dec. at p. 2). Chau, a System Engineer whose desk was next to Plaintiff's, told Stepp that he saw Plaintiff come out of Rabon's office and heard Plaintiff cursing: "I am sick of this sh[*]t and I can't take this anymore." (Stepp Dec. at ¶ 7; Ex. A to Stepp Dec. at pp. 2-3). Chau noted that Plaintiff then packed up his belongings and said: "I am f[***]ing out of here, nice knowing all of you I can't take this sh[*]t anymore, this is bullsh[*]t." (Stepp Dec. at ¶ 7; Ex. A to Stepp Dec. at p. 3). Chau also reported to Stepp that Plaintiff did not pull his weight at work and that Plaintiff constantly slept on the job, sometimes for hours. (Stepp Dec. at ¶ 7; Ex. A to Stepp Dec. at p. 3). Another System Engineer, Casey, told Stepp he heard Plaintiff yelling and cursing: "I am tired of this f[***]ing sh[*]t." (Stepp Dec. at ¶ 8; Ex. A to Stepp Dec. at p. 3). As a result of the investigation, Charter concluded that Plaintiff had acted inappropriately. (Stepp Dec. at ¶ 9).

On November 16, 2016, at the start of the third shift (i.e., 10:00 p.m.), a meeting was held with Plaintiff, Rabon, Stepp, Jonathan Holt (Supervisor), and Peter Cleyman (Sr. Director of Video Operations), to discuss the results of the investigation. (Stepp Dec. at ¶ 10; Ex. A to Stepp Dec. at pp. 2-3). Stepp explained that, based on the investigation, there was no evidence to support Plaintiff's allegations that Rabon had threatened or intimidated him, but there was ample evidence from witnesses establishing that Plaintiff had shouted and cursed at Rabon. (Stepp Dec. at ¶ 10; Ex. A to Stepp Dec. at p. 3; Ex. 5 to Pl. Dep.). Stepp then offered Plaintiff an

4

opportunity to respond, but he said "no comment." (Stepp Dec. at ¶ 10; Ex. A to Stepp Dec. at p. 3; Ex. 5 to Pl. Dep.; Pl. Dep. at 91:22-92:1). Stepp concluded by stating that management and Human Resources would discuss the next steps and meet with Plaintiff in the next couple of days. (Stepp Dec. at ¶ 10; Ex. A to Stepp Dec. at p. 3; Ex. 5 to Pl. Dep.; Pl. Dep. at 95:2-9). Immediately after the meeting, Plaintiff asked to leave rather than work his shift, and management granted his request. (Stepp Dec. at ¶ 11; Ex. A to Stepp Dec. at pp. 3-4; Ex. 5 to Pl. Dep.; Pl. Dep. at 95:7-9).

Plaintiff states that he "felt sick to [his] stomach" when hearing Stepp discuss the investigation results and was so disturbed that it triggered an adverse physical reaction, nearly causing him to run off the road on his way home. (Pl. Dep. at 95:10-16, 100:19-25, 102:7-14). The next day, November 17, 2016, Plaintiff went to his primary care physician, Dr. David Tignor, to discuss the previous night's symptoms (lightheadedness and upset stomach) and his current work situation. (Pl. Dep. at 101:10-18). Dr. Tignor decided to keep Plaintiff out of work for one month to help reduce and relieve his stress and anxiety. (Pl. Dep. at 119:4-14; Ex. 7 to Pl. Dep.).

Later that same day, Plaintiff contacted Charter's third-party leave administrator, Sedgwick Claims Management Services, Inc. ("Sedgwick"), to request a leave under Charter's short-term disability ("STD") policy. (Pl. Dep. at 113:12-15; Rabon Dec. at ¶ 12; Ex. A to Rabon Dec.). Sedgwick requested information and medical documentation from Plaintiff and Dr. Tignor to evaluate Plaintiff's STD leave request. (Exs. 7, 8 & 9 to Pl. Dep.). On December 9, 2016, Sedgwick denied Plaintiff's request for STD benefits because his medical documentation did not support a disability. (Pl. Dep. at 137:14-138:19; Ex. 11 to Pl. Dep.). Sedgwick provided the following explanation for its decision:

5

Medical Received from Dr. Tignor on 11/28/2016 does not substantiate disability due to lack of medical documentation providing evidence[] of severity of condition[]. [Employee] had normal exam and does not require medication indicating no significant symptoms. It is not clear what deficits prevent employee from performing his job duties. RN did attempt to contact the medical provider for more information two different times without success. (Ex. 11 to Pl. Dep., p. 2). Consequently, Plaintiff's request for STD benefits was "denied from 11/17/2016 through [his] Return to Work [date]."

(Id. at p. 1).

By email dated December 14, 2016, Charter received notification of Sedgwick's denial of Plaintiff's request for STD benefits. (Ex. B to Rabon Dec.). Sedgwick also noted that Plaintiff was being granted leave under the FMLA for the requested one-month period of absence from November 17, 2016, until December 17, 2016. (Id.).

On December 16, 2016, Plaintiff appealed the denial of the STD benefits request, and included therewith a December 15, 2016 letter from Dr. Tignor. (Pl. Dep. at 138:20-139:10; Exs. 10 & 12 to Pl. Dep.). On December 20, 2016, an appeals specialist from Sedgwick's National Appeals Unit ("NAU") acknowledged receipt of the appeal and advised that Plaintiff would receive a written response by January 30, 2017. (Pl. Dep. at 139:11-140:1; Ex. 13 to Pl. Dep.). On January 13, 2017, the appeals specialist notified Plaintiff that NAU had "reaffirm[ed] the denial of [STD] benefits for the period of November 17, 2016 to [Plaintiff's] return to work." (Pl. Dep. at 140:2-14; Ex. 14 to Pl. Dep.). The appeals specialist also noted that, as part of the review process, Plaintiff's file had been referred to independent specialist Patrick Young, M.D., a board certified psychiatrist, who performed a "comprehensive review of the available medical records" and spoke with Dr. Tignor on January 6, 2017. (Pl. Dep. at 140:15-22; Ex. 14 to Pl. Dep. at p. 2). It was further noted that:

Following review of the available medical records and teleconference materials, the independent specialist concluded that although your job may have been

6

stressful, you were not functionally impaired from a psychiatric condition. Your mental status was normal, you were not depressed and it was determined that you did not require medication or therapy. Treatment was to be off work for a month and there was no clinical data to support functional impairment from occupation as of November 17, 2016 to your return to work.

(Ex. 14 to Pl. Dep. at p. 2; see also Ex. 15 to Pl. Dep.).

On December 2, 2016, while Plaintiff was on leave, he sent a letter to Charter requesting to be transferred to a different department because of his recent interactions with his manager. (Pl. Dep. at 218:8-19; Ex. 25 to Pl. Dep.; Stepp Dec. at ¶ 14). In that letter, Plaintiff alleged discrimination for the first time. (Pl. Dep. at 217:11-18; Ex. 25 to Pl. Dep.; Stepp Dec. at ¶ 14). On December 16, 2016, Plaintiff provided Charter with Dr. Tignor's note stating that Plaintiff was "cleared" to return to work and "should not have any further work restriction." (Ex. 10 to Pl. Dep.). Although Dr. Tignor's note also requested that Plaintiff be transferred to a different department, he did not indicate that Plaintiff was unable to perform any of the essential functions of his job absent the transfer, nor did he otherwise identify any impairment that substantially limited Plaintiff in a major life activity. (Stepp. Dec. at ¶ 15; Ex. B to Stepp Dec.; Ex. 10 to Pl. Dep.). Additionally, as noted, Sedgwick and Dr. Young independently concluded Plaintiff's medical record disclosed no such impairment. Accordingly, during a subsequent telephone call with Plaintiff on December 21, 2017, Stepp explained that Charter could not approve his request to be transferred to another department. (Stepp. Dec. at ¶ 16; Dec. of Myra Rushton ("Rushton Dec.") at ¶ 6; Ex. 20 to Pl. Dep.).

Plaintiff should have returned to work December 18, 2016—the day after his approved FMLA leave ended—but he did not return or request an extension of the leave. (Stepp. Dec. at ¶ 17; Rushton Dec. at ¶ 5). Over the next three months, Charter attempted to contact Plaintiff regarding a return to work and whether he required any reasonable accommodations in order to

7

do so.  (Stepp. Dec. at ¶ 18; Rushton Dec. at ¶ 7; Exs. 18-22 to Pl. Dep.).

On March 9, 2017, Stepp and Rushton reached out to Plaintiff to inquire about his intent to return to work.  (Stepp. Dec. at ¶ 19; Rushton Dec. at ¶ 8; Ex. 18 to Pl. Dep.).  Plaintiff responded by noting his previous doctor's note requesting a transfer to a different department under a different supervisor.  (Stepp. Dec. at ¶ 19; Rushton Dec. at ¶ 8; Ex. 19 to Pl. Dep.).  Plaintiff stated that if Charter was unable to provide him with that exact accommodation, he "would hope that [Charter] would at least offer [him] some other sort of accommodation that you all believe would help accommodate [his] disability based on [his] doctor's note." (Ex. 19 to Pl. Dep.).  On March 13, 2017, Rushton emailed Plaintiff, reminding him that his transfer request had been reviewed and that Charter's decision not to approve the request was communicated to him on December 21, 2016.  (Rushton Dec. at ¶ 9; Exs. 19 & 20 to Pl. Dep.).  She then informed Plaintiff that he needed to return to work on March 16, 2017, or submit documentation supporting his need for additional leave or another accommodation.  (Rushton Dec. at ¶ 9; Ex. 20 to Pl. Dep.).  Rushton noted that if Plaintiff did not return or provide the additional documentation, his employment would be terminated.  (Id.).

On March 17, 2017, Plaintiff submitted a second letter from Dr. Tignor.  (Stepp. Dec. at ¶ 21; Rushton Dec. at ¶ 10; Ex. 21 to Pl. Dep.).  As the functional equivalent of his prior suggestion of re-assigning Plaintiff to a different department and a different supervisor, Dr. Tignor then suggested that Plaintiff be allowed to work remotely from home beginning April 5, 2017.  (Stepp. Dec. at ¶ 21; Rushton Dec. at ¶ 10; Ex. 21 to Pl. Dep.).  Dr. Tignor did not include any medical justification for why working from home was necessary for Plaintiff to perform his job's essential functions.  Later that day, Rushton sent a follow-up email enclosing a letter stating that Plaintiff had one more day, and if he failed to return to work or provide

8

information to support his time off, his employment would be terminated that day. (Stepp. Dec. at ¶ 22; Rushton Dec. at ¶ 11; Ex. 22 to Pl. Dep.). Plaintiff did not return to work or otherwise respond to Rushton's request, and Charter terminated Plaintiff's employment effective March 18, 2017. (Stepp. Dec. at ¶ 23; Rushton Dec. at ¶ 12).

## II.    STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

The party seeking summary judgment has the initial burden of demonstrating that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Id. at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. Id. Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. Anderson, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. Dash v. Mayweather, 731 F.3d 303, 311 (4th Cir. 2013). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are

9

irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248. Further, Rule 56 provides, in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, the non-movant must show the existence of a factual dispute on every essential element of his claim.

## III. DISCUSSION

### A. Defendant's Pending Motion to Strike and Plaintiff's Pending Motion in Limine

Before addressing the merits of Defendant's summary judgment motion, the Court first addresses Defendant's pending motion to strike Plaintiff's Surreply and Plaintiff's motion in limine. First, as to Defendant's pending motion to strike Plaintiff's Surreply, Defendant states correctly that Plaintiff filed a Surreply without first seeking leave of Court as required by this Court's Local Rule 7.1(e) and that the Surreply seeks to submit documents that Plaintiff did not disclose during discovery. The Court will grant the motion to strike for the reasons stated by Defendant.[3]

---

[3] The Court notes, however, even if it were to consider the new evidence that Plaintiff purports to submit in his Surreply, it would not alter the Court's finding that Defendant is entitled to summary judgment.

10

Next, as to Plaintiff's pending motion in limine, Plaintiff seeks to exclude the testimony of six witnesses: (a) Vinh Chau, Mark Flynn and Greg Casey, the three Charter employees who witnessed Smith curse and shout at his manager; (b) Myra Rushton, the Charter Human Resources Manager who communicated with Plaintiff to urge him to return to work and with regard to his termination for job abandonment; (c) Patrick Young, M.D., the board certified psychiatrist who performed an independent review of Plaintiff's medical records at the request of third-party administrator, Sedgwick, and determined those records did not indicate Plaintiff was functionally impaired from a psychiatric condition; and (d) an unidentified Sedgwick representative who communicated with Plaintiff about approval of his FMLA leave and denial of STD benefits. Although Plaintiff argues in his motion that these witnesses have no relevant testimony to offer and the probative value of the witnesses' proffered testimony is outweighed by the undue delay and waste of time in calling them, Defendant has demonstrated that these witnesses are clearly relevant. Therefore, the motion in limine is denied. Furthermore, to the extent Plaintiff's motion seeks to exclude certain documents, that request is also denied, as the documents he seeks to exclude are also relevant and Plaintiff has provided no reason to exclude them.

**B.  Defendant's Summary Judgment Motion**

**1. Plaintiff's ADA Discrimination and Failure to Accommodate Claim**

The Court first addresses Defendant's motion for summary judgment as to Plaintiff's ADA discrimination and failure to accommodate claims. Because Plaintiff has no direct evidence of discrimination, his claims are subject to the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 572 (4th Cir. 2015) (holding McDonnell Douglas applies to disability

discrimination claims). The McDonnell Douglas framework has three steps: (1) the plaintiff must first establish a prima facie case of employment discrimination or retaliation; (2) the burden of production then shifts to the employer to articulate a non-discriminatory or non-retaliatory reason for the adverse action; (3) the burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the stated reason for the adverse employment action is a pretext and that the true reason is discriminatory or retaliatory. Guessous v. Fairview Prop. Invs., LLC, 828 F.3d 208, 216 (4th Cir. 2016).

As pertinent here, to establish a prima facie case of disability discrimination under the ADA, Plaintiff must prove (a) he was a member of the class protected by the ADA, i.e., he was a qualified individual with a disability or was regarded as having a disability, and (b) he was performing his job at a level that met Charter's legitimate expectations at the time of his discharge. Propst v. HWS Co., 148 F. Supp. 3d 506, 524 (W.D.N.C. 2015). The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities" or "being regarded as having such an impairment." 42 U.S.C. § 12102(1). Although an individual may be regarded as having a disability because of a "perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity," the "regarded as" definition does not apply to minor or transitory impairments (i.e., "with an actual or expected duration of 6 months or less"). Id. § 12102(3). Furthermore, a "qualified individual" under the ADA is a person "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." Id. § 12111(8).

Here, Plaintiff has not presented any evidence on summary judgment that he had a disability at the time of his discharge. Rather, he relies on conclusory allegations that he suffered

12

from "significant stress and anxiety," (Doc. No. 35 at ¶ 49) but he "fails to allege any facts that suggest that [his] alleged anxiety and [stress] substantially limit[] any major life activity, especially his ability to work." Patterson v. McDonald, 220 F. Supp. 3d 634, 638 (M.D.N.C. 2016). Furthermore, an independent psychiatrist determined Plaintiff did not have a disability, and by mid-December 2016 Plaintiff's own doctor cleared him to return to work without "any further work restriction."

Furthermore, "a personality conflict between an employee and a supervisor—even one that triggers the employee's depression—is not enough to establish that the employee is disabled, so long as the employee could still perform the job under a different supervisor." Schneiker v. Fortis Ins. Co., 200 F.3d 1055, 1062 (7th Cir. 2000) Weller v. Household Fin. Corp., 101 F.3d 519, 524-25 (7th Cir. 1996) (same). Indeed, it is "well-established that the inability to work with particular co-workers or supervisors does not create a substantial limitation on the major life activity of working." Frantz v. Shinseki, No. 1:10cv275, 2012 WL 259980, at *8 (M.D.N.C. Jan. 27, 2012); see also Knight v. McCarthy, No. 1:19cv262, 2020 WL 759891 at *10 (E.D. Va. Feb. 13, 2020) (rejecting claim that the plaintiff's "panic anxiety disorder" affected her ability to work with her supervisor and that her employer failed to accommodate her alleged disability by refusing to remove her from that individual's supervision); Comber v. Prologue, Inc., No. CIVJFM-99 2637, 2000 WL 1481300, at *3 (D. Md. Sept. 28, 2000) (finding that the plaintiff was not substantially limited in her ability to work when she claimed she could perform her job "but for her troubled relationship with her former colleague"); Kolpas v. G.D. Searle & Co., 959 F. Supp. 525, 530 (N.D. Ill. 1997) ("[M]erely not being able to work for particular individuals because of stress and anxiety is ... not a substantial limitation on the major life activity of working.").

Moreover, the undisputed evidence on summary judgment shows that Plaintiff's condition required only a relatively short leave before Plaintiff's doctor released him to return to work without restriction. Thus, the summary judgment evidence shows that Plaintiff suffered from a "temporary impairment," which does not qualify as a disability under the ADA. See Pollard v. High's of Balt., Inc., 281 F.3d 462, 468 (4th Cir. 2002) ("An impairment simply cannot be a substantial limitation on a major life activity if it is expected to improve in a relatively short period of time."). Indeed, the Fourth Circuit has held "it is evident that the term 'disability' does not include temporary medical conditions, . . . even if those conditions require extended leaves of absence from work." Halperin, 128 F.3d at 199; accord Kitchens v. Boeing Co., No. 2:16cv3723, 2018 WL 4476124, at *4 (D.S.C. Sept. 19, 2018). Consequently, Plaintiff cannot avoid summary judgment by proving he was disabled at the time of his discharge.

Plaintiff also cannot survive summary judgment by claiming he was regarded as disabled. Plaintiff has presented no evidence establishing that Charter believed, mistakenly or otherwise, that Plaintiff had a physical or mental impairment that was not minor or transitory. To the contrary, Charter repeatedly asked Plaintiff to return to work after his approved one-month leave of absence expired. By definition, a condition requiring only a one-month leave is a transitory impairment that precludes Plaintiff from proving he was regarded as having a disability. 42 U.S.C. § 12102(3)(B) ("Paragraph (1)(C) [defining disability to include being regarded as having such an impairment] shall not apply to impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less."). Additionally, an employer's "repeated and strenuous efforts to secure [the plaintiff's] return to work cause[s] [the plaintiff's] claim that [the employer] regarded him as disabled in the major life activity of working to 'fly in the face of common sense.'" Haulbrook v. Michelin N. Am.,

14

252 F.3d 696, 703 (4th Cir. 2001). In sum, because Plaintiff has presented no evidence on summary judgment to raise a genuine despite as to whether he had a disability or was regarded as having a disability, Defendant is entitled to summary judgment as to this claim.

Plaintiff also fails to establish a prima case of ADA wrongful discharge because he cannot make the required showing that at the time of his discharge, he was performing the job at a level that met his employer's legitimate expectations. Because Plaintiff repeatedly refused to attend work for three full months after his approved leave, Plaintiff cannot prove he was performing his job at all, much less to the level of Charter's legitimate expectations. See Tyndall v. Nat'l Educ. Ctrs., Inc. of Calif., 31 F.3d 209, 213 (4th Cir. 1994) ("An employee who cannot meet the attendance requirements of the job at issue cannot be considered a 'qualified' individual protected by the ADA."). Therefore, Plaintiff cannot meet the satisfactory performance prong of the prima facie case.

It follows that Plaintiff's ADA failure to accommodate claim also fails. To prove a prima facie case of a ADA failure to accommodate claim, Plaintiff must show: (1) he was an individual with a disability within the meaning of the statute; (2) his employer had notice of his disability; (3) with a reasonable accommodation he could perform the essential functions of his position; and (4) his employer refused to make such accommodations. Wilson v. Dollar Gen. Corp., 717 F.3d 337, 345 (4th Cir. 2013). According to Plaintiff, he could return to work only if Charter transferred him to a different department with a different supervisor or allowed him to work from home as the functional equivalent of such a transfer.[4] In addition to the fact that Plaintiff has not

---

[4] Defendant asserts that, even if the Court were to view working from home as materially different from changing supervisors, it would remain an unreasonable accommodation. See Credeur v. Louisiana Through Office of Attorney Gen., 860 F.3d 785, 789 (5th Cir. 2017) (affirming dismissal of failure to accommodate claim based on denial of employee's "continuing

15

shown that he is disabled under the ADA, Plaintiff's ADA accommodation claim fails because changing an employee's supervisor as an accommodation is unreasonable as a matter of law. See, e.g., Coulson v. Goodyear Tire & Rubber Co., 31 Fed. App'x 851, 858 (6th Cir. 2002); Gaul v. Lucent Techs., Inc., 134 F.3d 576, 581 (3d Cir. 1998); Weiler v. Household Fin. Corp., 101 F.3d 519, 526 (7th Cir. 1996); see also Howell v. Holland, No. 4:13-CV-00295-RBH, 2015 WL 751590, at *19 (D.S.C. Feb. 23, 2015); Larson v. Virginia, Dep't of Transp., No. 5:10-CV-00136, 2011 WL 1296510, at *2 (W.D. Va. Apr. 5, 2011); Wiggins v. Davita Tidewater LLC, 451 Fed. Supp. 2d 789, 799 (E.D. Va. 2006); Newby v. Whitman, 340 F. Supp. 2d 637, 656–58 (M.D.N.C. 2004); Gaul v. AT & T Inc., 955 F. Supp. 346, 352–53 (D.N.J. 1997). Here, given Plaintiff's insistence that he could perform the essential duties of his job only with an unreasonable accommodation, Plaintiff is not a "qualified individual" under the ADA.

In addition, Charter has stated job abandonment as the legitimate, nondiscriminatory reason for his discharge, and Plaintiff has not presented any evidence on summary judgment showing that reason is a pretext for unlawful discrimination. To show pretext, Plaintiff must carry the burden of proving "by a preponderance of the evidence that the legitimate reasons offered by the defendant[-employer] were not its true reasons, but were a pretext for discrimination." Westmoreland v. TWC Admin. LLC, 924 F.3d 718, 726 (4th Cir. 2019)

_____

request to work from home"). Defendant notes that, significantly here, Charter required its System Engineers to work onsite to allow employees to work as a team in managing, configuring, testing, and monitoring Charter's operating systems, as well as to ensure that Charter management could effectively monitor work flow, build teamwork, assess job performance, and maintain quality control and quality assurance standards. (Rabon Dec. at ¶ 4). Consistent with this requirement, Plaintiff acknowledged that none of the Systems Engineers who worked the third shift regularly worked from home. (Pl. Dep. at 160:17-162:10).

16

(quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)).  Plaintiff has presented no evidence that job abandonment was not the true reason for his discharge, nor has he produced any evidence suggesting he was discharged because of his alleged disability. Significantly, Plaintiff can point to no similarly situated employee who failed to return from leave but who was retained as employee.  Plaintiff has not carried the ultimate burden of proving he was discharged because of his alleged disability, and Charter is therefore entitled to summary judgment as to this claim.

In sum, Plaintiff has failed to present evidence on summary judgment to satisfy his prima facie case of wrongful discharge and failure to accommodate under the ADA.  In any event, even if Plaintiff had proven his prima facie case, Charter has stated job abandonment as the legitimate, non-discriminatory reason for his discharge, and Plaintiff has not presented any evidence on summary judgment to show that the stated reason is a pretext for unlawful discrimination.  Thus, Charter is entitled to summary judgment as to Plaintiff's ADA wrongful discharge and failure to accommodate claims.

### 2. Plaintiff's Retaliation Claims

Plaintiff's FMLA, ADA, and Title VII retaliation claims are based on non-selection for positions he claims to have applied for at Charter.  (Doc. No. 35 at ¶¶ 84-89).  Applying the statute of limitations and the requirement of administrative exhaustion, the Court dismissed Plaintiff's ADA and Title VII retaliation claims except to the extent they are based on positions Charter decided not to award him between September 29, 2016, and the date of his EEOC Charge, March 27, 2017.  (Doc. No. 43 at 6, 10).  Plaintiff's FMLA claim is necessarily subject to a similar limitation because it is undisputed that Plaintiff first exercised any FMLA rights when he requested leave on November 17, 2016, which Charter granted.  (Doc. No. 35 at ¶ 32).

17

To establish a retaliation claim under the ADA, FMLA, or Title VII, Plaintiff must show that retaliation was a "but-for cause" of his non-selection for positions in the pertinent time periods—i.e., he would have been selected for those positions if he had not engaged in the alleged protected activity. Guessous v. Fairview Prop. Invests., LLC, 828 F.3d 208, 216–17 (4th Cir. 2016). To do so, Plaintiff must establish a prima facie retaliation claim by proving (1) he engaged in protected conduct, (2) he suffered an adverse action, and (3) a causal link exists between the protected conduct and the adverse action. See A Soc'y Without a Name v. Commonwealth of Va., 655 F.3d 342, 350 (4th Cir. 2011). If Plaintiff establishes a prima facie case, the burden shifts to Charter to articulate a legitimate, non-retaliatory reason for the adverse employment action. Guessous, 828 F.3d at 216. Once Charter provides a non-retaliatory reason for its action, Plaintiff, who bears the ultimate burden of persuasion, must show by a preponderance of the evidence that the proffered reason was a pretext for retaliation. Id.

Plaintiff cannot prove the second and third elements of a prima facie case—an adverse action causally linked to protected conduct. "In determining whether the alleged retaliatory action is materially adverse as required for the second element, the court should ask whether it was harmful enough to 'dissuade a reasonable worker from making or supporting a charge of discrimination.'" Belyakov v. Johnson, No. CV DKC 2008-0757, 2009 WL 10685454, at *4 (D. Md. Feb. 5, 2009) (quoting Burlington N. & S.F.R. Co. v. White, 548 U.S. 53, 54 (2006)). Additionally, because Plaintiff asserts Rabon retaliated against him with negative references, he must prove "(1) the disparaging comments that were made or how [Rabon] spoke ill of the plaintiff's job performance; (2) to whom the discriminatory statements were made; and (3) the position or positions for which plaintiff was denied employment as a result of the negative job references." Belyakov, 2009 WL 10685454, at *4.

18

Plaintiff has not presented any evidence on summary judgment to raise a genuine dispute as to his retaliation claim. Beyond vague and conclusory assertions, Plaintiff has not identified any positions in the pertinent time periods for which he applied and was not selected, nor has he established that he was qualified for any such positions or offered any probative information regarding the alleged negative references. Therefore, Plaintiff has not shown that Charter took materially adverse actions against him that were causally linked to his alleged protected activity.

Moreover, Charter has stated legitimate, non-retaliatory reasons for Plaintiff's non-selection—i.e., each non-selection occurred because Plaintiff was not qualified for the position or another qualified candidate was determined to have superior skills and/or experience—and Plaintiff has presented no evidence on summary judgment to show that those reasons were a pretext for retaliation. See (Rushton Dec. at ¶ 13). For example, having failed to even identify the pertinent positions or prove that Rabon gave any negative references (which Rabon denies), Plaintiff has not presented any evidence to show that similarly situated individuals who did not engage in protected activity were selected instead of him, nor has he otherwise suggested any causal link between the allegedly retaliatory negative references and non-selection. Because Plaintiff has not presented any competent evidence that Charter's stated reasons for non-selection were pretextual and the true reason was retaliation, Charter is entitled to summary judgment as to Plaintiff's retaliation claims.

### 3. Plaintiff's FMLA Interference Claim

The FMLA provides "it shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" under the FMLA. 29 U.S.C. § 2615(a)(1). To establish a prima facie case of FMLA interference, Plaintiff must prove: (1) he was eligible for FMLA protections; (2) Charter was covered by the FMLA; (3) he was entitled to

19

FMLA leave; (4) he provided sufficient notice of his intent to take leave; and (5) Charter denied him FMLA benefits to which he was entitled. See Burnett v. LFW Inc., 472 F.3d 471, 477 (7th Cir. 2006). Here, it is undisputed that after denying Plaintiff's his request for STD benefits, Charter granted Plaintiff FMLA leave for the requested period from November 17, 2016, through December 17, 2016. Plaintiff's doctor cleared him to return to work on December 18, 2016. After that date, Plaintiff neither sought nor requested additional FMLA leave, despite his ongoing dealings with Sedgwick regarding his STD appeal. Thus, because Plaintiff was not denied FMLA leave, Charter is entitled to summary judgment as to this claim.

### 4. Plaintiff's Title VII Race Discrimination Claim

Plaintiff also claims that Charter discriminated against him based on his race, African-American. Because Plaintiff has presented no direct evidence of discrimination based on race, he must therefore proceed under McDonnell Douglas, which requires a prima facie case consisting of four elements: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class. Coleman v. Md. Ct. of App., 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 132 S. Ct. 1327 (2012). As the Court has already discussed, Plaintiff cannot satisfy the second or fourth prongs because he has presented no evidence showing that a similarly situated employee failed to return from an approved leave and was retained. In any event, Charter has articulated a legitimate, nondiscriminatory reason for Plaintiff's discharge, and Plaintiff has presented no evidence to suggest that reason is pretextual. See McNeil v. Scotland Cty., 213 F. Supp. 2d 559, 568 (M.D.N.C. 2002) (race-based retaliatory discharge claim fails as matter of law when plaintiff did not return to work after exhausting FMLA leave); Izzard v. Federal Home Loan Mortg. Corp., 108 F.3d 1372 (4th Cir. 1997) (unpublished opinion)

(affirming summary judgment on race discrimination and retaliation claims where plaintiff "terminated not because of racial animus, but because she failed to return to work when her FML[A] period expired").

### 5. Plaintiff's Defamation (Libel/Slander) Claims

Here, in support of his defamation claims against Charter, Plaintiff relies solely on an alleged August 25, 2017, email purportedly sent to him by a third-party recruiter (DISYS) to allege that Charter defamed him by falsely stating that his prior employment with Charter was terminated for cause due to performance issues. (Pl. Dep. at 168:1-169:7, 170:7-18; Ex. 23 to Pl. Dep.). To establish defamation, Plaintiff must prove that Charter made false, defamatory statements of or concerning him, which were communicated (published) to a third person, causing injury to Plaintiff's reputation. See, e.g., Pierce v. Atl. Grp., Inc., 724 S.E.2d 568, 578 (N.C. Ct. App. 2012). Charter is entitled to summary judgment as to this claim because the email is inadmissible double hearsay, which cannot be used as the basis for Plaintiff's defamation claim. Accord Cho v. Duke Univ., 1:18cv288, 2020 WL 353617, at *8 (M.D.N.C. Jan. 21, 2020). The email contains "multiple levels of hearsay," including the statement of the email's author, Brad Morris (of third-party DISYS), regarding what purportedly was conveyed by an unidentified person at Charter to another unidentified person at DISYS after Plaintiff was terminated. This is "plainly inadmissible hearsay." Cho, 2020 WL 353617, at *8. "[H]earsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment." Id. (quoting FED. R. CIV. P. 56(c)(1)(B), (c)(2), (c)(4)).

Additionally, even if Plaintiff had offered non-hearsay evidence of the alleged defamatory statement, the statement still could not be imputed to Charter. "In North Carolina, the post-termination statements of an employer's agent about the basis for an employee's

termination are not within the agent's scope of employment and are therefore not attributable to the employer." Higgins v. Synergy Coverage Solutions, LLC, No. 18cvs12548, 2020 WL 256486, at **14-15 (N.C. Sup. Ct. Jan. 15, 2020) (citing Stutts v. Duke Power Co., 47 N.C. App. 76, 81 (1980) (no vicarious liability where plaintiff alleged former manager made false statement about his dishonesty to prospective employers after his termination)). Here, even if some unknown Charter employee did make the alleged statement, it could only have been made after Plaintiff was discharged. Thus, Charter cannot be held vicariously liable under North Carolina law for the alleged post-termination statement, and Charter is therefore entitled to summary judgment as to Plaintiff's libel and slander claims.

## IV.    CONCLUSION

For the reasons stated herein, Defendant is entitled to summary judgment as to all of Plaintiff's claims.

**IT IS, THEREFORE, ORDERED** that:

1.   Defendant's Motion for Summary Judgment, (Doc. No. 68), is **GRANTED**.

2. Plaintiff's pro se Motion in Limine, (Doc. No. 67), is **DENIED**.

3. Defendant's Motion to Strike Surreply, (Doc. No. 79) is **GRANTED**.

4. This action is dismissed with prejudice.

5. The Clerk is directed to terminate this action.


Signed: July 2, 2020

Max O. Cogburn Jr.
United States District Judge